[Cite as *State v. Haynesworth*, 2018-Ohio-4519.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 106671

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### RONZELL D.A. HAYNESWORTH

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-16-609380-B and CR-17-613080-A

BEFORE:    Jones, J., E.A. Gallagher, A.J., and E.T. Gallagher, J.

RELEASED AND JOURNALIZED:    November 8, 2018

**ATTORNEY FOR APPELLANT**

Gregory T. Stralka
6509 Brecksville Road
P.O. Box 31776
Independence, Ohio 44131


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Kelly Needham
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Ronzell Haynesworth ("Haynesworth"), appeals his convictions in two cases. For the reasons that follow, we affirm.

{¶2} In Cuyahoga C.P. No. CR-16-609380-B, Haynesworth was charged with one count of aggravated robbery with a three-year firearm specification. As part of his plea deal with the state of Ohio, Haynesworth agreed to plead guilty to robbery with a three-year firearm specification, make a post-plea statement with regard to the circumstances of the crime, and testify truthfully at his codefendant's trial.

{¶3} During his change of plea hearing, counsel for Haynesworth requested a court psychiatric report prior to the sentencing hearing. Counsel stated that Haynesworth had a

"number of different issues" with respect to his prior military service and counsel thought it "would be important for the court to understand that."

{¶4} In Cuyahoga C.P. No. CR-17-613080-A, Haynesworth was charged with two counts each of aggravated burglary, aggravated robbery, kidnapping, and improper discharge of a firearm at or into a habitation. All counts contained one- and three-year firearm specifications. After plea negotiations, Haynesworth pleaded guilty to one count each of aggravated burglary and aggravated robbery with three-year firearm specifications; and two counts of kidnapping and one count of improper discharge of a firearm at or into a habitation with no firearm specifications.

{¶5} A subsequent sentencing hearing was held and Haynesworth was sentenced on both cases. The trial court considered the court psychiatric clinic's report and sentenced Haynesworth to a total of 11 years in prison.

{¶6} Haynesworth filed a notice of appeal and raises two assignments of error for our review. Further facts will be discussed under the assignments of error.

> I. The trial court erred when it accepted appellant's guilty plea without first determining the extent of his psychiatric disorder and the effect it had on his ability to understand the consequences of his plea.
>
> II. Appellant was denied his right to effective assistance of counsel by the failure
>
> to request an expert evaluation concerning the competency of appellant prior to
>
> entering his guilty plea.

{¶7} In the first assignment of error, Haynesworth argues that the trial court erred when it accepted his guilty plea without first determining the extent of his psychiatric disorder and what affect that disorder had on Haynesworth's ability to understand the consequences of his plea.

{¶8} "When a defendant enters a plea in a criminal case, the plea must be made

knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11(C)(2) governs the acceptance of guilty pleas in felony cases. It provides:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶9} The underlying purpose of Crim.R. 11(C) is to convey information to the defendant so that the defendant can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). To determine whether the trial court has satisfied its duties under Crim.R. 11(C)(2), reviewing courts distinguish between constitutional rights and nonconstitutional rights. *State v. Veney*, 120 Ohio St.3d. 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14-21. The trial court must strictly comply with the requirements of Crim.R. 11(C)(2)(c) relating to the waiver of constitutional rights. *Id.* at ¶ 18. "Substantial compliance" is sufficient for the nonconstitutional aspects of Crim.R. 11(C)(2). *Id.* at ¶ 14; *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), syllabus.

"Substantial compliance" means that under the totality of the circumstances the defendant subjectively understands the implications of his or her plea and the rights he or she is waiving. *Nero* at *id.* Even if a trial court makes an error in attempting to comply with Crim.R. 11(C)(2)(a), there is still substantial compliance if it appears from the record that the defendant appreciated the effect of his or her plea and his or her waiver of rights. *State v. Thomas*, 8th Dist. Cuyahoga No. 94788, 2011-Ohio-214, ¶ 13, citing *State v. Caplinger*, 105 Ohio App.3d 567, 572, 664 N.E.2d 959 (4th Dist.1995). Additionally, even if the trial court does not substantially comply, a defendant must generally show prejudice before a plea will be vacated for an error involving Crim.R. 11(C)(2) when nonconstitutional aspects of the colloquy are at issue. *Veney* at ¶ 17. To demonstrate prejudice in this context, the defendant must show that the plea would not have otherwise been entered. *Id.* at ¶ 15.

{¶10} Haynesworth has not alleged a specific violation of Crim.R. 11(C)(2). Instead, Haynesworth contends that given the statements he made regarding his mental health during the plea colloquy, the trial court could not properly conclude that his plea was knowingly, intelligently, and voluntarily made without first ordering a mental health evaluation to ensure that he had the mental capacity to enter a plea.

{¶11} This court has held that the mere fact that a defendant suffered from a mental illness or was taking psychotropic medication under medical supervision when the defendant entered a guilty plea is not an indication that the plea was not knowing and voluntary, that the defendant lacked mental capacity to enter a plea, or that the trial court otherwise erred in accepting the defendant's guilty plea. *State v. McClendon*, 8th Dist. Cuyahoga No. 103202, 2016-Ohio-2630, ¶ 16; *see also State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 71 ("The fact that a defendant is taking * * * prescribed psychotropic drugs does

not negate his competence to stand trial.").

{¶12} A trial court "is not required to order an evaluation of a defendant's mental health every time the issue is raised." *McClendon* at ¶ 17, citing *State v. Bowen*, 8th Dist. Cuyahoga Nos. 70054 and 70055, 1996 Ohio App. LEXIS 5612 (Dec. 12, 1996). This court has held that a person who suffers from mental illness or takes psychotropic drugs may be able to understand the charges against him or her and assist in his or her defense. *McClendon* at *id.*, citing *State v. Robinson*, 8th Dist. Cuyahoga No. 89136, 2007-Ohio-6831; *see also State v. Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986) (A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him or her and be able to assist counsel.).

{¶13} A defendant is presumed competent to stand trial unless it is established that the defendant is unable to understand the nature and objective of the proceedings or cannot assist in his or her own defense. R.C. 2945.37(G); *Robinson* at ¶ 20, citing *State v. Swift*, 86 Ohio App.3d 407, 411, 621 N.E.2d 513 (11th Dist.1993). "Therefore, a defendant's * * * mental instability does not establish incompetence for the purpose of negating a plea, which was otherwise voluntarily, knowingly, and intelligently made." *McClendon* at ¶ *id.*, citing *State v. Prettyman*, 8th Dist. Cuyahoga No. 79291, 2002-Ohio-1096.

{¶14} In this case, Haynesworth argues that once he told the court he was not taking his mental health medications, the trial court was obligated to make an additional inquiry to determine his mental state and his ability to understand his change of plea. During the plea colloquy in Case No. CR-16-609380-B, the following exchange occurred between the court and Haynesworth:

Court:   Do you have any physical or mental illnesses?

Defendant:   Yes, Your Honor.

Court:   What?

Defendant: I suffer from PTSD and social anxiety.

Court:   When you are not in jail, are you prescribed medications for those mental illnesses?

Defendant:   Yes, Your Honor. * * * The medications I have are gabapentin, I also am prescribed Paxil, Lyrica, and the third one I'm not sure of the name, but [there] is a third one.

Court:   Did you have those prescriptions, and were they in effect as of around the time you were jailed?
Defendant:   I did have the prescriptions. I —   they were not in effect because I was [incarcerated] at the jail.

Court:   Well, let me ask you this. What date were you arrested? August 29 or so?

Defendant:   September 22nd.

Court:   Around mid-September were you generally taking your medications or not before you were arrested?

Defendant:   Before I was arrested, some of them, yes.

Court:   But some of them not?

Defendant:   Yes.

Court:   Now, since you've been in jail, have you been receiving any of your mental health medications through the sheriff's infirmary?

Defendant:   My first month here I did receive Paxil for 30 days — for 25 days. I stopped five days prior to its renewal.

Court:   You stopped or they stopped it without your —

Defendant:   Well, I declined to take it for two days, and they made me sign a waiver for it if I wanted to start it back up.   I would have to ask the nurse.

Court: But that was the Paxil only. Are you taking * * * everything else?

Defendant:   No, I'm not.

Court:    So, just to be clear then, in jail currently you are not taking any of your     mental health medications?

Defendant:    Not currently, Your Honor.

Court: Now, anything about the fact that you're not taking those medications that interferes with your ability to think clearly here today?

Defendant:    No, Your Honor.

Court: Do you believe you're thinking clearly here today?

Defendant:    Yes, Your Honor.

Court:    And if during this hearing I say something that you don't understand will you be certain to tell me that and ask me to either repeat it, explain it, or otherwise clarify it for you?

Defendant:    Yes, Your Honor.

{¶15} The trial court then went through the rights that Haynesworth was giving up by pleading guilty.   The court asked if Haynesworth understood each right and Haynesworth answered "Yes, Your Honor."   The trial court outlined the possible sentences and asked if he understood.   Haynesworth answered, "Yes, Your Honor.   I understand."

{¶16} After the plea colloquy, the state questioned Haynesworth about the robbery and Haynesworth set forth the facts of the robbery he committed, as he had said he would do as part of his plea agreement with the state.   He also subsequently testified at his codefendant's trial.

{¶17} Thus, based on this record, the trial court *did* further inquire as to Haynesworth's mental health status and if the fact that he was not taking his prescribed medication had any effect on his state of mind or ability to comprehend the proceedings.

{¶18} During the plea hearing for Case No. CR-17-613080-A, the court again inquired whether Haynesworth had any "physical or mental impairment."   Haynesworth stated he had a physical impairment:

Defendant:   I have mental stints in my neck from receiving a broken neck. I broke my neck three times, your Honor.

Court:   Are you required to take any medication for that?

Defendant:   Yes.

Court:   Have you been taking it in jail?

Defendant:   They do not offer it here in the county facility, your Honor.

Court:   What are you supposed to take?

Defendant:   I'm supposed to take Percocet.

Court:   So pain killers?

Defendant: Pain killers, yes, Your Honor.

Court: Is there anything about not having that medication for the stints in your neck that interferes with your ability to think clearly here today?

Defendant:   No, Your Honor.

Court: Do you believe you're thinking clearly here today?

Defendant: Yes, Your Honor.

{¶19} Notably, Haynesworth did not mention any mental health issues during this plea hearing.

{¶20} At Haynesworth's first plea hearing, he acknowledged that he was taking only some of his medications before his arrest.   He took Paxil for the first few weeks he was in jail, but voluntarily stopped taking the medication.   Haynesworth told the court that his not taking that medication did not interfere with his ability to think clearly at the time of the plea and that he was, in fact, thinking clearly at that time.

{¶21} During the second plea hearing, Haynesworth did not mention any mental conditions; instead he told the court that he was prescribed Percocet related to neck pain, but was

not currently taking the medicine. Haynesworth does not allege that his inability to procure Percocet while in jail interfered with his ability to think clearly; he stated he was thinking clearly at the time of his second plea.

{¶22} In both cases, the record indicates that Haynesworth understood the nature and consequences of his plea. No evidence has been presented establishing that Haynesworth was unable to understand the nature and objective of the proceedings or could not assist in his defense. In fact, one could conclude that Haynesworth assisted in his defense by placing a statement on the record against his codefendant as part of his plea in case number CR-16-609380-B.

{¶23} The record demonstrates that the court complied with Crim.R.11(C). Haynesworth has failed to show that his mental condition or the medications he was not taking at the time of his pleas affected his judgment or ability to understand his plea or the proceedings. Moreover, there is nothing in the transcript that indicates that Haynesworth did not understand the implications of his pleas and the rights he was waiving by pleading guilty.

{¶24} Accordingly, the first assignment of error is overruled.

{¶25} Under his second assignment of error, Haynesworth claims that he was denied effective assistance of counsel. In order to substantiate a claim of ineffective assistance of counsel, Haynesworth must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 200, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

The defendant has the burden of proving his counsel rendered ineffective assistance. *Perez* at ¶ 223.

**{¶26}** Haynesworth asserts that his trial counsel's failure to request a competency evaluation prior to his entering his guilty pleas prejudiced him. We find, however, that there is nothing in the record to show that this prejudiced Haynesworth. There was no indication that Haynesworth was not competent; counsel indicated that he wanted Haynesworth evaluated by the court psychiatric clinic prior to sentencing so the court could understand Haynesworth's issues with respect to his previous overseas military service.

**{¶27}** Haynesworth has not shown that his trial counsel was ineffective for failing to request a competency evaluation prior to his plea, and there is nothing in the record to indicate that the results would have been different had this been done.

**{¶28}** The second assignment of error is overruled.

**{¶29}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., JUDGE

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR